UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN BARNES,

      Case No.

     Plaintiff,

      Hon.

vs.      United States District Judge

UNITED PARCEL SERVICE, INC.,     Magistrate Judge

     Defendant.

---

Michael L. Pitt (P24429)
Pitt, McGehee, Palmer & Rivers, P.C.
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
Tel: 248-398-9800
mpitt@pittlawpc.com
Counsel for Plaintiff

Kevin M. Carlson (P67704)
Kevin M. Carlson PLLC
P.O. Box 6028
Plymouth, MI 48170
Tel: 734-386-1919
kevin@kevincarlsonlaw.com
Counsel for Plaintiff

---

**COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES**

**AND DEMAND FOR JURY TRIAL**

Plaintiff Kevin Barnes, through counsel, complains against Defendant United Parcel Service, Inc. as follows:

## PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Kevin Barnes (African-American, Age 37) is a resident of Oakland County, Michigan and a former employee of Defendant United Parcel Service, Inc.

2.  Defendant United Parcel Service, Inc. is a corporation incorporated under the laws of the State of Ohio and maintains is principal place of business in Atlanta, Georgia.

3.  This is a race discrimination, disability discrimination, and retaliation action brought pursuant to Title VII, 42 U.S.C. §1981 and the Americans With Disabilities Act, as well as Michigan's Elliott-Larsen Civil Rights Act and Persons With Disabilities Civil Rights Act.

4.  This Court has subject matter jurisdiction over this matter because Plaintiff's claims arise under federal law, specifically Title VII, 42 U.S.C. §1981 and the Americans with Disabilities Act.

5.  This Court should exercise supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same set of facts as the federal law claims, such that all claims form part of the same case or controversy.

6.     This Court has personal jurisdiction over Defendant United Parcel Service, Inc. because it regularly conducts business in Michigan and the events giving rise to this case occurred in connection with its business operations in Michigan.

7.     Venue is proper in the Eastern District of Michigan because the parties reside in this district and the events giving rise to the claims occurred in this district.

8.     Prior to filing this action, Plaintiff exhausted his administrative remedies by filing a timely charge of race discrimination, disability discrimination, and retaliation with the Equal Employment Opportunity Commission (EEOC).

9.     This action is filed within 90 days of Plaintiff's receipt of a notice of right-to-sue from the EEOC.

## GENERAL ALLEGATIONS

10.    Plaintiff Kevin Barnes (Barnes) is an African-American male.

11.    Barnes has been diagnosed with a chronic dermatological condition known as Pseduofollicultis Barbae (PFB).

12.    PFB causes severe ingrown hairs in a person's beard area, skin inflammation, painful irritation rashes, sores, scarring, risk of bacterial infection, and abnormal cell growth.

13.     In this condition, the hairs, when shaved, then curve back into the skin and create ingrown hairs.

14.     As a result, large inflammatory papules develop which may persist and progress to scars and keloids in the face, neck and beard areas.

15.     There is no cure for PFB and the only remedy is to allow the affected individual to wear a beard.

16.     Patients can manage PFB by not shaving.

17.     If a person with PFB shaves or manages the condition inadequately, the condition can cause sores, infection, scars and keloids.

18.     PFB occurs in occurs in approximately 45 percent to 83 percent of black men who shave.

19.     PFB is caused by the natural curve of facial hair in black men.

20.     By contrast, white males do not generally develop PFB because their facial hair follicles emerge straight from the skin.

21.     The only effective treatment for PFB is to stop shaving, which results in growing a beard.

22.     UPS maintains appearance standards, including that employees be clean shaven.

23.     On June 18, 2015, Barnes submitted to UPS a letter from his dermatologist advising that "due to dermatological conditions, Mr. Kevin Barnes, is unable to shave on a regular basis. Shaving the skin tends to exacerbate this condition to the point of discomfort."

4

24.     After Barnes submitted this letter, UPS initially accommodated his condition and exempted him from enforcement of the company's appearance standards regarding facial hair.

25.     Caucasian employees of UPS routinely fail to comply with the company's appearance standards by wearing facial hair, inappropriate clothing, and visible tattoos, without facing discipline or other repercussions.

26.     Starting on or about December 24, 2016, UPS's Division Manager, Paul Maconochie, started harassing Barnes about his facial hair and appearance and told him to shave.

27.     Despite his harassment of Barnes, Maconochie did not tell Barnes to apply for a variance or exemption from the company's appearance standards.

28.     Barnes responded to Maconochie by telling him that he had previously submitted a letter from his doctor's office regarding his condition.

29.     On May 2, 2017, Maconochie again confronted Barnes about his facial hair, telling him that he could not work.

30.     On May 8, 2017, Maconochie sent Barnes a letter threatening termination unless he supplied medical documentation.

31.     In response, on May 5, 2017, Barnes obtained a new letter from his dermatologist regarding his condition, which included a diagnosis and indicated that "this condition may be chronic and alleviated by maintaining a trimmed beard."

32.     Barnes submitted this letter to UPS through his direct supervisor.

33.     After Barnes submitted this letter, UPS allowed him to return to work.

34.     Barnes then submitted a complaint to Rob Nichols, Maconochie's manager, informing him that Maconochie was harassing him about his facial hair.

35.     Nichols subsequently told Barnes that he had spoken with Maconochie and told him to leave Barnes alone.

36.     Barnes also filed a union grievance over Maconochie's harassment at that time.

37.     On November 9, 2017, Maconochie again confronted Barnes and told him to shave or he could not work.

38.     Barnes again told Maconochie that he had submitted medical documentation regarding his need for an accommodation and that they had just addressed this issue with grievance panel.

39.     Barnes then received forms to request a variance from the company's appearance standard.

40.     Barnes completed the forms and submitted them on November 20, 2017.

41.     Barnes also filed a grievance against Maconochie based on his harassment regarding his facial hair.

42.     On December 13, 2017, while Barnes's request for variance was pending, Maconochie gave Barnes an Official Warning Notice regarding his facial hair.

43.     On February 23, 2018, Barnes finished his shift and was having a friendly conversation with a co-worker.

44.     Maconochie confronted Barnes in an aggressive manner and approached him face-to-face and chest-to-chest, invading Barnes's personal space and physically touching Barnes in a threatening manner.

45.     Maconochie told Barnes he was fired.

46.     Maconochie's conduct towards Barnes was retaliation based on Barnes's requests for accommodation and for Barnes's harassment and discrimination complaints regarding Maconochie.

47.     Maconochie was not disciplined or terminated for his aggressive conduct towards Barnes.

48.     UPS sent Barnes a termination letter on February 26, 2018.

49.     As a direct result of the adverse treatment alleged in the paragraphs above, Barnes has experienced and will continue to experience economic damages including lost wages and benefits and other forms of compensation, both past and future.

50.     As a direct result of the adverse treatment alleged above, Barnes has experienced and will continue to experience non-economic damages including humiliation, mental anguish, outrage, embarrassment and loss of reputation, and loss of business expectancy.

## COUNT I
## RACE DISCRIMINATION AND RETALIATION
## TITLE VII

51.     Plaintiff incorporates and re-alleges the foregoing paragraphs by reference.

52.     At all relevant times, Plaintiff was an employee for purposes of Title VII.

53.     At all relevant times, Defendant was an employer for purposes of Title VII.

54.     Under Title VII, Defendant was obligated to refrain from discriminating against Plaintiff because of his race, ethnicity and/or color and from retaliating against Plaintiff because of his protected activity, which includes opposing unlawful employment practices through formal and informal grievances, reports, or other complaints to management regarding discrimination and harassment based on race.

55.     Defendant UPS and Barnes's manager, Maconochie, were at all relevant times aware of Barnes's race and medical condition, and had actual or

constructive knowledge of Barnes's legally-protected activities, including his requests for accommodation and complaints of harassment and discrimination.

56.   In violation of its statutory obligations, Defendant discriminated against Plaintiff because of his race, ethnicity and/or color and retaliated against Plaintiff because of his legally protected activities.

57.   In violation of this statutory obligation, Defendant suspended and terminated Plaintiff because of his race.

58.   Plaintiff engaged in protected activities for purposes of Title VII because he opposed unlawful employment practices through grievances and other complaints to management about being harassed, denied accommodations, and being discriminated against because of his race.

59.   In violation of this statutory obligation, Defendant suspended and terminated Plaintiff because of his protected activity.

60.   The reasons asserted by Defendant for Plaintiff's termination are false and a pretext for race discrimination and retaliation.

61.   Barnes's race and protected activities were the sole, proximate and but-for cause of UPS's decision to terminate him, as demonstrated by the fact that UPS did not have a legitimate basis to discipline Barnes and terminate his employment.

62.   Examples of UPS's intentional disparate treatment of Plaintiff because of race bias and retaliation include, but are not limited to:

a. Harassing and disciplining Plaintiff for failing to adhere to the company's appearance standards, despite Plaintiff's formal requests for accommodation, while allowing Caucasian employees to routinely fail to comply with those standards by wearing improper clothing, visible tattoos, and facial hair without discipline or other repercussions.

b. Terminating Plaintiff's employment based on the incident of February 23, 2018, where Plaintiff's Caucasian manager, Maconochie, was the aggressor in the incident and did not receive any discipline for his instigation of or involvement in the confrontation.

63.    Defendant's violations of Title VII were willful and malicious, thus supporting an award of punitive damages.

64.    UPS maintains a discriminatory pattern and practice of non-enforcement of the appearance standards as to Caucasian employees while enforcing the standards against African-American employees, including Barnes.

65.    As a direct result of the violation of Plaintiff's civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits as well as emotional distress, humiliation, loss of reputation and mental anguish.

66.    Accordingly, Plaintiff requests the following relief:

a. An order awarding reinstatement or front pay in lieu of reinstatement;

b. An order awarding compensatory damages;

c. An order awarding punitive damages;

d. An order awarding attorney fees and costs; and

e. An order awarding such other relief the Court deems just and equitable.

## COUNT II
## RACE DISCRIMINATION AND RETALIATION
## 42 U.S.C. § 1981

67. Plaintiff incorporates and re-alleges the foregoing paragraphs by reference.

68. Under 42 U.S.C. §1981, Defendant was obligated to refrain from discriminating against Plaintiff because of his race, ethnicity and/or color and from retaliating against Plaintiff because of his protected activity, which includes opposing unlawful employment practices through grievances, reports and complaints of discrimination and harassment based on race.

69. Defendant UPS and Barnes's manager, Maconochie, were at all relevant times aware of Barnes's race and medical condition, and had actual or constructive knowledge of Barnes's legally-protected activities, including his requests for accommodation and complaints of harassment and discrimination based on race.

70. In violation of its statutory obligations, Defendant discriminated against Plaintiff because of his race, ethnicity and/or color and retaliated against Plaintiff because of his legally protected activities.

71. In violation of this statutory obligation, Defendant suspended and terminated Plaintiff because of his race.

11

72.    Plaintiff engaged in protected activity under 42 U.S.C. § 1981 because he opposed unlawful employment practices through grievances, reports and complaints of discrimination and harassment based on race.

73.    In violation of this statutory obligation, Defendant suspended and terminated Plaintiff because of his legally protected activities.

74.    The reasons asserted by Defendant for Plaintiff's termination are false and a pretext for race discrimination and retaliation.

75.    Barnes's race and protected activities were the sole, proximate and but-for cause of UPS's decision to terminate him, as demonstrated by the fact that UPS did not have a legitimate basis to discipline Barnes and terminate his employment.

76.    Examples of UPS's intentional disparate treatment of Plaintiff because of race bias and retaliation include, but are not limited to:

a.    Harassing and disciplining Plaintiff for failing to adhere to the company's appearance standards, despite Plaintiff's formal requests for accommodation, while allowing Caucasian employees to routinely fail to comply with those standards by wearing improper clothing, visible tattoos, and facial hair without discipline or other repercussions.

b.    Terminating Plaintiff's employment based on the incident of February 23, 2018, where Plaintiff's Caucasian manager, Maconochie, was the aggressor in the incident and did not receive any discipline for his instigation of or involvement in the confrontation.

77.    Defendant's violations of 42 U.S.C. § 1981 were willful and malicious, thus supporting an award of punitive damages.

78.     UPS maintains a discriminatory pattern and practice of non-enforcement of the appearance standards as to Caucasian employees while enforcing the standards against African-American employees, including Barnes.

79.     As a direct result of the violation of Plaintiff's civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits as well as emotional distress, humiliation, loss of reputation and mental anguish.

80.     Accordingly, Plaintiff requests the following relief:

    a.  An order awarding reinstatement or front pay in lieu of reinstatement;

    b.  An order awarding compensatory damages;

    c.  An order awarding punitive damages;

    d.  An order awarding attorney fees and costs; and

    e.  An order awarding such other relief the Court deems just and equitable.

## COUNT III
## DISABILITY DISCRIMINATION AND RETALIATION
## AMERICANS WITH DISABILITIES ACT

81.     Plaintiff incorporates all the foregoing allegations by reference.

82.     At all relevant times, Plaintiff was an employee for purposes of the Americans With Disabilities Act (ADA).

83.     At all relevant times, Defendant was an employer for purposes of the ADA.

84.    The ADA prohibits employers from discriminating against qualified individuals with disabilities.

85.    Discrimination under the ADA encompasses adverse employment actions motivated by prejudice and fear of disabilities as well as failing to make reasonable accommodations for an employee's disabilities.

86.    The ADA further provides that "n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter..."

87.    Requests for accommodation also constitute protected activity under the ADA.

88.    Barnes has a medical condition that is recognized as a disability for purposes of the ADA because PFB is an impairment/physiological disorder substantially affecting major bodily functions including the skin and the immune system. See 29 C.F.R. §1630(h)(1) (defining impairment as "any physiological disorder or condition…affecting one or more body systems such as neurological, musculoskeletal, special sense organs, respiratory, cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin and endocrine."); see also Cleveland C., et. al., v. Dep't. of Defense, EEOC Appeal Nos. 0120170405 – 0120170414, 2018 WL 4951642 (Sept. 26, 2018) (Holding that police

officers with PFB were disabled under the ADA and that employer's policy violated the ADA by requiring them to be clean shaven while on duty).

89.     Barnes has a physical impairment affecting the skin in that he is diagnosed with Pseudofolliculitis Barbae, a chronic bacterial skin disorder resulting from ingrown hairs that causes skin irritation, rashes, sores, scarring, infection, among other symptoms brought-on by clean shaving.

90.     This bacterial skin disorder, PFB, substantially limits Plaintiff in the operation of major bodily functions, including the immune system and the skin.

91.     Because the operation of a major bodily function is a major life activity, Barnes has a physical impairment of the skin that substantially limits him in major life activities, and therefore he is an individual with a disability, pursuant to the ADAA.

92.     Barnes is otherwise qualified to perform the essential functions of his former job with UPS, with or without reasonable accommodation by UPS.

93.     Barnes suffered adverse employment actions based solely upon disability, including Defendant's refusal to make reasonable accommodations for his disability and Defendant's termination of his employment because of his disability.

94.     Barnes complied with UPS's procedures for requesting reasonable accommodation and provided UPS with sufficient medical information setting forth the medical basis for his request and supporting his request for accommodation.

95.     Barnes engaged in protected activity by requesting accommodations and opposing unlawful employment practices, including discrimination based on his medical condition, harassment based on the condition, and the denial of reasonable accommodations, through reports, grievances, and complaints to management about those actions.

96.     Defendant UPS as well as Barnes's manager, Maconochie, had actual or constructive knowledge of Barnes's disability, his need and request for accommodation, and his grievances, reports, and complaints of harassment and discrimination, including failure to accommodate, based on disability.

97.     Defendant terminated Barnes's employment in retaliation for his protected activities under the ADA, including his requests for accommodation and his complaints of harassment and discrimination.

98.     The reasons asserted by Defendant for Plaintiff's termination are false and a pretext for disability discrimination and retaliation.

99.     Barnes's disability and protected activities were the sole, proximate and but-for cause of UPS's decision to terminate him, as demonstrated by the fact that UPS did not have a legitimate basis to discipline Barnes and terminate his employment.

100.    Defendant's violations of the ADA were willful and malicious, thus supporting an award of punitive damages.

101.   As a direct result of the violation of Plaintiff's civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits as well as emotional distress, humiliation, loss of reputation and mental anguish.

102.   Accordingly, Plaintiff requests the following relief:

   a.   An order awarding reinstatement or front pay in lieu of reinstatement;

   b.   An order awarding compensatory damages;

   c.   An order awarding punitive damages;

   d.   An order awarding attorney fees and costs; and

   e.   An order awarding such other relief the Court deems just and equitable.

**COUNT IV**
**RACE DISCRIMINATION AND RETALIATION**
**ELLIOTT-LARSEN CIVIL RIGHTS ACT**

103.   Plaintiff incorporates and re-alleges the foregoing paragraphs by reference.

104.   At all relevant times, Plaintiff was an employee for purposes of Michigan's Elliott- Larsen Civil Rights Act ("ELCRA" or "the Act.")

105.   At all relevant times, Defendant was an employer for purposes of the Act.

106. Under the ELCRA, Defendant was obligated to refrain from discriminating against Plaintiff because of his race, ethnicity and/or color.

107.   The Act further prohibits an employer from taking an employment action adverse to an employee because the employee opposed a violation of the Act.

108.   Plaintiff engaged in protected activity under the Act because he opposed violations of the Act through reports, grievances and complaints of harassment and discrimination based on race.

109.   Defendant UPS and Barnes's manager, Maconochie, were at all relevant times aware of Barnes's race and medical condition, and had actual or constructive knowledge of Barnes's legally-protected activities, including his requests for accommodation and opposition to violations of the Act, through reports, grievances and complaints of harassment and discrimination based on race.

110.   In violation of its statutory obligations, Defendant discriminated against Plaintiff because of his race, ethnicity and/or color and retaliated against Plaintiff because of his legally protected activities.

111.   In violation of this statutory obligation, Defendant suspended and terminated Plaintiff because of his race

112.   In violation of this statutory obligation, Defendant suspended and terminated Plaintiff because of his legally protected activities.

113.   The reasons asserted by Defendant for Plaintiff's termination are false and a pretext for race discrimination and retaliation.

114.   Barnes's race was the cause of UPS's decision to terminate him, in that his race was one of the reasons that made a difference in UPS's decision to terminate his employment.

115.   Barnes's protected activity was the cause of UPS's decision to terminate him, in that his race and/or protected activity was a significant factor in UPS' decision, as demonstrated by the fact that UPS did not have a legitimate basis to discipline Barnes and terminate his employment.

116.   Examples of UPS's intentional disparate treatment of Plaintiff because of race bias and retaliation include, but are not limited to:

    a.   Harassing and disciplining Plaintiff for failing to adhere to the company's appearance standards, despite Plaintiff's formal requests for accommodation, while allowing Caucasian employees to routinely fail to comply with those standards by wearing improper clothing, visible tattoos, and facial hair without discipline or other repercussions.

    b.   Terminating Plaintiff's employment based on the incident of February 23, 2018, where Plaintiff's Caucasian manager, Maconochie, was the aggressor in the incident and did not receive any discipline for his instigation of or involvement in the confrontation.

117.   Defendant's violations of the Act were willful and malicious.

118.   As a direct result of the violation of Plaintiff's civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits as well as emotional distress, humiliation, loss of reputation and mental anguish.

119.   Accordingly, Plaintiff requests the following relief:

a. An order awarding reinstatement or front pay in lieu of reinstatement;

b. An order awarding compensatory damages;

c. An order awarding attorney fees and costs; and

d. An order awarding such other relief the Court deems just and equitable.

**COUNT V**
**DISABILITY DISCRIMINATION AND RETALIATION**
**PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**

120.   Plaintiff incorporates all the foregoing allegations by reference.

121.   At all relevant times, Plaintiff was an employee for purposes of Michigan's Persons With Disabilities Civil Rights Act ("PWDCRA" or "the Act").

122.   At all relevant times, Defendant was an employer for purposes of the Act.

123.   The PWDCRA prohibits employers from discriminating against a person because of a disability that is unrelated to the individual's ability to perform the duties of a particular job or position.

124.   The Act further provides that an employer shall accommodate a person with a disability unless the employer demonstrates that the accommodation would impose an undue hardship.

125.   The Act also provides that a person shall not retaliate or discriminate against a person because the person has opposed a violation of the Act.

126.    Barnes has a determinable physical impairment characteristic, PFB, that results from disease, congenital condition of birth, or functional disorder, affecting the skin, which substantially limits him in one or more of the major life activities and is unrelated to his ability to perform his former position with UPS, and therefore has a physical impairment that is recognized as a disability within the meaning of the PWDCRA.

127.    This bacterial skin disorder, PFB, substantially limits Plaintiff in the operation of major bodily functions, including the immune system and the skin.

128.    Barnes's condition, PFB, substantially impairs the bodily functions of the skin and the immune system.

129.    Barnes suffered adverse employment actions based upon disability, including Defendant's refusal to make reasonable accommodations for his disability and Defendant's termination of his employment because of his disability.

130.    Defendant UPS as well as Barnes's manager, Maconochie, had actual or constructive knowledge of Barnes's disability, his need and request for accommodation, and his opposition to unlawful employment practices through formal and informal reports, grievances and complaints of harassment and discrimination based on disability, and the refusal to accommodate him.

131.    Barnes complied with UPS's procedures for requesting reasonable accommodation and provided UPS with sufficient written medical information

setting forth the medical basis for his request and supporting his request for accommodation.

132.   Defendant terminated Barnes's employment in retaliation for his protected activities under the Act, including his requests for accommodation and his complaints of harassment, discrimination and failure to accommodate.

133.   The reasons asserted by Defendant for Plaintiff's termination are false and a pretext for disability discrimination and retaliation.

134.   Barnes's disability one of the reasons which made a difference in UPS determining whether to terminate his employment.

135.   Barnes's protected activity was a significant factor in Maconochie's harassment and discriminatory actions towards Barnes, as well as UPS's decision to terminate his employment.

136.   UPS did not have a legitimate basis to discipline Barnes and terminate his employment and its asserted bases for termination are a pretext for discrimination and retaliation.

137.   Defendant's violations of the PWDCRA were willful and malicious.

138.   As a direct result of the violation of Plaintiff's civil rights as alleged above, Plaintiff has and will continue to experience lost earnings and benefits as well as emotional distress, humiliation, loss of reputation and mental anguish.

139.   Accordingly, Plaintiff requests the following relief:

a. An order awarding reinstatement or front pay in lieu of reinstatement;

b. An order awarding compensatory damages;

c. An order awarding attorney fees and costs; and

d. An order awarding such other relief the Court deems just and equitable.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Defendant, and award him economic and non-economic damages sustained as a direct and proximate result of Defendant's conduct, punitive damages, all other equitable and injunctive relief deemed appropriate at the time of final judgment, together with costs and interest, attorney fees, and all such other legal and equitable relief as this court deems just and proper.

Respectfully submitted,

By: /s/ Michael L. Pitt (P24429)
Michael L. Pitt (P24429)
PITT, MCGEHEE, PALMER & RIVERS, P.C.
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mpitt@pittlawpc.com

<u>*By: /s/ Kevin M. Carlson*</u> (P67704)
Kevin M. Carlson (P67704)
KEVIN M. CARLSON PLLC
Attorney for Plaintiff
P.O. Box 6028
Plymouth, MI 48170
734-386-1919
kevin@kevincarlsonlaw.com

Date: February 8, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN BARNES,

       Plaintiff,

vs.

UNITED PARCEL SERVICE, INC.,

       Defendant.

Case No.

Hon.
United States District Judge

Magistrate Judge

---

Michael L. Pitt (P24429)
Pitt, McGehee, Palmer & Rivers, P.C.
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
Tel: 248-398-9800
mpitt@pittlawpc.com
Counsel for Plaintiff

Kevin M. Carlson (P67704)
Kevin M. Carlson PLLC
P.O. Box 6028
Plymouth, MI 48170
Tel: 734-386-1919
kevin@kevincarlsonlaw.com
Counsel for Plaintiff

---

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all facts and issues in this case.

Respectfully submitted,

By:/s/ *Michael L. Pitt* (P24429)
Michael L. Pitt (P24429)
PITT, MCGEHEE, PALMER & RIVERS, P.C.
Attorney for Plaintiff
117 West Fourth Street, Suite 200
Royal Oak, MI 48067
248-398-9800
mpitt@pittlawpc.com

By: /s/ *Kevin M. Carlson* (P67704)
Kevin M. Carlson (P67704)
KEVIN M. CARLSON PLLC
Attorney for Plaintiff
P.O. Box 6028
Plymouth, MI 48170
734-386-1919
kevin@kevincarlsonlaw.com

Date: February 8, 2019